# CLEMENT H. D'WOLF
## *v.*
# AMOS PRATT *et al.*

1. SPECIFIC PERFORMANCE — *when it will be decreed.* Applications for the specific performance of contracts for the sale of land are addressed to the sound legal discretion of the court; and it is not a matter of course that it will be decreed because a legal contract is shown to exist.

2. And, unless a party has rescinded a contract, the other party has a right to enforce its specific performance, unless he has been guilty of *laches*, rendering it inequitable to insist upon its enforcement.

3. Where such a contract, though verbal, is shown to have been fairly made, on a valuable consideration, the whole or a considerable portion of the purchase money paid, and no unreasonable and vexatious delay in paying the whole, possession taken, and valuable improvements made, and the vendee showing no disposition to evade the contract, and no hardship in it, and no evidence of abandonment by the vendee, — a specific performance has often been decreed, by compelling the execution of a deed.

4. In this case, a vendee of land, who was seeking a specific performance of the contract on the part of his vendor, had not paid all the purchase money at the time of filing his bill, although the time when it was made payable, by the terms of the agreement, had then elapsed. The circumstances upon which the question of *laches* in that regard depends, were these: Before any of the deferred payments under the contract became due, the vendor assigned the contract as security for his performance of an agreement with some third person, and, by virtue of that transfer, and the power therein given, the assignee sold the contract for a sum considerably less than the amount of purchase money due under the contract; the purchaser of this contract had previously purchased the lands from the vendee, who was seeking the specific performance, under a contract providing for the deferred payments of the same amounts, and payable at the same times as in the original contract. So the first purchaser, holding the obligations of his vendee, conveyed the land to him, upon his releasing the former from his covenants to his vendor, thus setting off and cancelling their respective liabilities; and while it was held, in adjusting the equities between all the parties, that the second purchaser, who was asking the specific performance through his grantor, the complainant, should pay to the original vendor what might be due under his contract, less the sum for which that contract was sold, yet there was no such *laches* on the part of the first purchaser, in respect to the payment or tender of the purchase money before filing his bill, as to deprive him of his right to a specific performance.

5. But, even if it were considered that the purchaser of the original contract did not acquire a right to the covenants made by the first vendee to his vendor,

yet, the adjustment of them, *bona fide* on the basis that he did, taken in connection with the fact that about the same time the first vendor conveyed the premises to a third person, might be offered as an excuse for the apparent delay of the first vendee in performing fully his covenants.

6. Where a portion of the purchase money is unpaid, and a bill is filed by the vendee of land for specific performance, the bill, in ordinary cases, should aver a tender, and should offer to bring the money into court. But the peculiar facts of this case, as above set forth, took it out of that rule.

7. AMENDMENT *of bill in chancery after a hearing and before a decree is announced — whether further proofs should be allowed.* Where a bill filed by a vendee of land, who had not paid all the purchase money, for a specific performance, was allowed to be amended after the cause was heard and while under advisement, by inserting an offer on the part of the complainant, to pay, do or perform whatever might be requisite to entitle him to the relief sought, it was held, the amendment was merely formal, and did not require the case should be re-opened to let in new proofs, as it did not contain matter which was the subject of proof.

8. BILL IN CHANCERY — *necessity of an offer to perform — and of the time and manner of objecting, if it is omitted.* On bill filed for specific performance, by a vendee of land who has not performed his covenants, if the circumstances of the case be such that it is technically necessary the bill should contain an offer to perform, the absence of such offer from the bill should be questioned by a demurrer.

9. After the cause is brought to a hearing upon bill, answer, replication and proofs, it is too late to raise the question whether the bill should contain such an offer; or, if the question should be then, for the first time, raised, it would be quite proper to allow an amendment to that effect *instanter.*

10. Such an offer, if not formally expressed in the bill, is implied by the very act of coming into court. Its absence from the bill does not widen or narrow the range of proof, nor affect the question of *laches* which may be involved in the case, nor deprive the party of the right to the relief sought, if entitled to it by the evidence.

11. CONTRACT — *when valid and binding, as distinguished from a mere naked power.* Where a vendor of land, who holds a contract for the payment of the purchase money, transfers such contract by assignment, to secure the performance of an agreement he has made with a third person, giving to the assignee power to sell the contract in case of default on the part of his assignor, and out of the proceeds to pay himself a certain sum as liquidated damages, such a contract conveys to the assignee a valid interest in the contract assigned, and not a naked power subject to revocation; and a purchaser of the contract so assigned, under the power given the assignee, takes a complete title thereto.

12. OF THE CONSIDERATION *for such contract of assignment.* The party assigning the contract had purchased other lands from the party to whom he assigned it, and the transfer was made to secure the payment of the first install-

ment of the purchase money thereon, and a sufficient consideration to support the assignment appeared in the agreement respecting the sale of those lands by the assignee to the assignor, and in the covenants to be performed by the former on the payment of the purchase money by the latter.

13. VENDOR AND PURCHASER — *deficiency in quantity of land sold — its effect on the rights of the parties.* Although a tract of land may fall short in quantity, yet, if the deficiency is inconsiderable, and not impairing, materially, the value of the remainder, the vendee may be compelled to take the land.

14. NOTICE, *by possession.* The actual, visible, open and notorious possession of land, is sufficient. to put a subsequent grantee upon inquiry as to the rights and equities of the party in possession.

15. DECREE — *who is bound thereby.* One who is neither a party nor a privy to a proceeding is not bound by the decree therein.

16. CONTRACTS — *time of their essence — who may declare a forfeiture.* Where a vendor of land, who holds a contract for the payment of the purchase money, in which it is stipulated that the time of performance by the vendor shall be essential, transfers such contract before any default thereon, he cannot afterward, upon bill filed by his vendee for a specific performance, insist upon a forfeiture of the contract by reason of any default on the part of the vendee subsequent to the transfer.

17. PURCHASE MONEY — *of the right of subsequent purchasers thereto.* Where a vendor of land subsequently conveys to a third person, although such subsequent conveyance was taken by the grantee with notice of the prior sale, and was made in fraud of the rights of the prior purchaser, still it is good as between the parties to it, and such subsequent grantee and those purchasing from him, will be entitled to any unpaid purchase money which may be decreed to be paid by the first vendee, on bill filed by him for specific performance.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

This was a suit in chancery instituted in the court below by Clement H. D'Wolf, against Amos Pratt, Jeremiah Pratt, S. W. Randall, Horatio O. Stone, Henry Snapp, K. G. Hammond and John E. Cole, to set aside certain fraudulent conveyances, compel the specific performance of a contract and confirm the title of complainant to certain real estate, situate in Cook county, in this State, known and described as the west half of original lot No. seven (7), in block No. fifty-seven (57), in the original town of Chicago, being lot No. three (3), and the west half of lot No. two (2) in the Canal trustees' subdivision of said

lot; also, the west half of the north-east quarter of section No. three (3) of township No. thirty-six (36), north of range No. fourteen (14), east of third principal meridian; also, the north fifteen (15) acres of the west half of the south-west quarter of section No. thirty-four (34), township No. thirty-nine (39), range No. fourteen (14), east of third principal meridian.

The court below, upon the hearing, refused to grant the relief sought by the complainant, and dismissed his bill. He thereupon sued out this writ of error. All the material facts of the case are set forth in the opinion of the court.

Mr. JOHN J. McKINNON and Messrs. GARRISON & BLANCHARD, for the plaintiff in error.

Mr. S. W. RANDALL and Mr. MELVILLE W. FULLER, for the defendants in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The facts presented in this record are substantially these; Calvin D'Wolf was in December, 1849, seized in fee by purchase and deed from Stephen Bronson, Jr., of the fifteen acres of land described in the bill of complaint of plaintiff in error: that, to secure the purchase money, on the 15th of June, 1850, he executed a deed of trust to James H. Collins, conveying all his interest therein to Collins, with authority to sell the land, in default of payment of the purchase money. Default having been made in the payment, on the 17th of March, 1852, Collins, as trustee, sold this land to one Denniston, and executed a deed which was duly recorded.

On the 18th of May, 1852, Denniston, by quitclaim deed of that date, sold and conveyed the land, together with other lands, to Amos Pratt, which deed was duly recorded. On the 26th of September, 1852, Calvin D'Wolf, by deed of that date, quitclaimed and released to Pratt, all his interest in this tract, and Pratt became on that day seized in fee of the same. Two days thereafter, to wit, on the 28th of September, 1852, Pratt negotiated a sale of this tract, together with other lands, to

plaintiff in error, Clement H. D'Wolf, which is evidenced by the articles of agreement made an exhibit in the bill of complaint, and recorded October 28, 1852. The sale was on credit, except a payment in hand of one hundred dollars by plaintiff in error, and the other payments were distributed over six years, the last falling due on the 28th of September, 1858. Complainant was put in possession of the lands, and claims to have so remained ever since, and to have paid the taxes on them.

On the 15th of January, 1853, the plaintiff in error entered into an agreement with Horatio O. Stone, by which he covenanted to convey to Stone this fifteen acres of land in fee simple, free and clear of all incumbrances, on the payment by Stone of four thousand two hundred and twenty-five dollars ; the fractionable portion ($225) being paid in hand, and the remaining payments, the same in amount as those due from plaintiff in error to Pratt, were distributed over the same years, and the last payment from Stone fell due on the same day the last payment was due from plaintiff in error to Pratt, viz., September 28, 1858, with authority to Stone to make the payments to Pratt upon plaintiff's contract with Pratt. Stone paid for plaintiff on this contract to Pratt, the $600 due September 28, 1853. This agreement, in referring to the contract with Pratt, recites that this contract, dated September 28, 1852, was recorded in the recorder's office of Cook county, in book No. 54 of deeds, page 115. The agreement between Stone and. plaintiff was duly recorded in the recorder's office.

On the 23d of September, 1853, Amos Pratt entered into an agreement with one Warren Parker, wherein Parker agreed to sell to Pratt certain lands for the sum of eight thousand dollars, in three equal annual payments, and, on Pratt's making the payments, he was to receive a deed from Parker ; Pratt, also, in order to secure the first payment due to Parker, on the same day indorsed upon his agreement with plaintiff in error, a transfer and assignment thereof, to Parker, which was duly acknowledged and recorded. This agreement was in duplicate.

These two agreements, the one between Pratt and Parker, and the other between plaintiff and Pratt, with Pratt's assign-

ment thereon to Parker, were, on the same day, deposited with Messrs. Brown and Hurd, in pursuance of an agreement between Pratt and Parker, substantially as follows: That Brown and Hurd should hold these papers until the tenth of October next ensuing, and, in case Pratt paid Parker on that day the sum of two thousand six hundred and sixty-six dollars and sixty-six cents, being the first payment due from him to Parker, and the interest thereon, then Brown and Hurd should deliver a duplicate of these agreements, and the contract between him, Pratt, and plaintiff in error, with the assignment thereon, back to Pratt, but that, in default of such payment, Brown and Hurd should deliver all the papers up to Parker, and he should have the right to sell, at public sale, the agreement between Pratt and plaintiff in error, and to pay himself one thousand dollars as liquidated damages for the non-performance of the covenants by Pratt with Parker. Default was made by Pratt, and thereupon, Brown and Hurd, though notified by Pratt not to do so, delivered up the papers to Parker, who proceeded to sell, at public sale, this agreement between Pratt and plaintiff in error, and the assignment thereon, and on the 28th of January, 1854, after due notice of the sale, sold the same to Stone, as the highest bidder, for the sum of one thousand dollars, which was then and there paid by Stone to Parker, who thereupon executed and delivered to Stone a deed thereof, and of the lands described in the agreement, reciting all the above facts, which deed was duly acknowledged and recorded, upon which, Stone claimed to be the absolute owner in fee of all the right, title and interest of Pratt to these articles of agreement, and to the lands described therein.

After Stone's purchase from plaintiff in error of the 15 acre tract, he entered into possession of it, and claims that he has ever since retained the possession. Soon after the purchase of this agreement of complainant and Pratt, by Stone, at the public sale, on the 4th of February, 1854, Stone owing plaintiff in error as much money for the 15 acre tract as plaintiff owed Pratt under their agreement, plaintiff, recognizing Stone as the owner of the agreement with Pratt, made a deed in fee to

Stone, which was duly recorded, of the 15 acres, and Stone, in consideration thereof, released and discharged plaintiff in error from all his covenants in that agreement, thus setting off and cancelling their respective liabilities.

On the 7th of October, 1853, Amos Pratt, for the expressed consideration of three thousand dollars, conveyed by quitclaim deed this fifteen acre tract to his brother, Jeremiah Pratt, who, on the eleventh day of that month, caused this deed to be recorded, and claims the title, disclaiming all knowledge of these agreements, and insisting as his deed was on record before the assignment by Pratt to Parker, and by Parker to Stone of these agreements, that his right is the better right.

It appears, that Stone, on concluding this arrangement with plaintiff, took immediate possession of these fifteen acres, had it surveyed, platted and mapped, and the plat recorded, and streets graded, drained, and part fenced, and sold some of the lots, and paid all the taxes assessed against the land, except those on the lots he sold to the purchasers named in the bill of complaint. These purchasers took immediate possession, and several of them have built upon the lots so bought. As early as 1858, four or five dwelling houses were built on them, and occupied; up to that time Stone had sold two-thirds of the lots, and since, all have been sold, except about twenty or thirty lots. Warren Parker died in the fall of 1854. Stone, in the fall of 1853, was a man of means, and wealthy, and has continued responsible. The lot on Madison street, mentioned in the bill of complaint, has, since September 28, 1852, been in the possession of plaintiff in error, and of those claiming under him. For many years before filing this bill, Amos Pratt was a resident of the State of California. On the 1st day of December, 1858, plaintiff conveyed, by warranty deed, the west half of original lot 7, in block 57, in the original town of Chicago, it being the same as lot 3, and west half of lot 2, in the canal trustees' subdivision of that lot, to Joseph E. Brown.

H. W. Clarke, who took the acknowledgment of the deed from Amos Pratt to Jeremiah Pratt, thinks Jeremiah was not then present. Stone purchased the agreement assigned to

Parker by Pratt, under the advice of Van H. Higgins, an eminent lawyer of Chicago, who told Stone he might, for his own protection, become a bidder at the sale, and that the purchase by him would be a legal and equitable transaction on his part. Amos Pratt never made the payments to Parker which he had covenanted to make. His assignment to Parker was as follows:

"For value received, I, Amos Pratt, do hereby assign, transfer and deliver, unto Warren Parker, his heirs and assigns, forever, all my right, title, interest and claim, in and to the within contract, and the moneys due, or to become due, thereon; also, all my right, title and interest, in and to the lands and tenements in said contract described. I do hereby grant and convey unto the said Warren Parker, his heirs and assigns, forever, subject to the covenants in said contract expressed.

"Witness my hand and seal this 23d day of September, 1853."

It also appeared, that, after the purchase of this contract of plaintiff's by Stone, he filed a bill in chancery against Amos and Jeremiah Pratt, setting out these facts, and claiming that he was the owner of this contract, and of right entitled to a deed from Amos Pratt, but he had conveyed his interest in the land to Jeremiah Pratt — claiming that this deed was fraudulent and made with full notice of the contract between Amos Pratt and plaintiff in error, and of the assignment of the contract by Amos to Parker, and insists, that Jeremiah holds the interest he may have acquired by his deed from Amos, as trustee for him, Stone. That Jeremiah, on application to him for that purpose, refused to convey to him, and he prayed for a decree to compel Amos and Jeremiah to release and quitclaim the fifteen acres to him, and for general relief.

Jeremiah Pratt, in his answer, admitted the title to this land to be in Amos Pratt, and admitted the agreement with plaintiff in error, but alleges, that large sums of money were, by that agreement, to be paid by plaintiff to Amos, that have not been paid, and for that reason the agreement was void; admits that the agreement between Amos Pratt and Warren Parker may

have been made, but does not know the particulars; and so with regard to the deposit of the papers with Brown and Hurd, but says that Amos, on account of some defect in the title Parker had agreed to convey him, had notified Parker and Brown and Hurd, that he had rescinded the contract with Parker, and had become entitled to have the papers restored to him; denies the authority to sell, and the regularity of the sale, and that by the sale Stone acquired any right to the agreement, or title to the land; denies the validity of release by Stone to plaintiff; insists that it is too late to claim a specific performance — that the deed from Amos Pratt to him was for the consideration of $3,300 paid in money and property; states, when called on to make a deed, he declined doing so, without full payment of the amount specified in the agreement of plaintiff in error, with Amos Pratt, and that he had, by his deed, become entitled to the benefit of all the covenants therein. He also filed a cross-bill, making Stone and plaintiff in error defendants, and praying that the agreement between plaintiff and Amos Pratt might be delivered up to be canceled and for general relief. The answer to the cross-bill alleges, that the agreement between Amos Pratt and plaintiff in error was filed for record and recorded September 28, 1852, and insists upon his title and claim as set forth in the original bill. Jeremiah Pratt, on the hearing, showed nothing but the deed from Amos to him. The court dismissed the bill, and, on appeal to this court, the decree was affirmed.

This bill of plaintiff in error seeks to set aside this deed to Jeremiah Pratt, and to compel a specific performance of the agreement of September 28, 1852, between plaintiff in error and Amos Pratt, and to confirm his title to the land described in the bill.

Before passing to the merits of this case, it may be well to say that the case of *Stone* v. *Pratt*, 25 Ill. 25, decides only, that, inasmuch as Amos Pratt's contract was for the conveyance of several distinct tracts of land, and Stone claimed but one of them, the contract could not be split up into pieces, and a specific performance, as to such tract, be decreed. Such a con-

tract will not be enforced in parcels. The plaintiff was no party to that suit, and, in it, the rights of the parties to the suit were never determined.

It is the law of this court that applications for the specific performance of contracts for the sale of land are addressed to the sound legal discretion of the court; and it is not a matter of course that it will be decreed because a legal contract is shown to exist. *Frisby* v. *Ballance*, 4 Scam. 287. And, unless a party has rescinded a contract, the other party has a right to enforce its specific performance, unless he has been guilty of *laches* rendering it inequitable to insist upon its enforcement. *Anderson* v. *White*, 27 Ill. 63.

Where such a contract, though verbal, is shown to have been fairly made, on a valuable consideration, the whole or a considerable portion of the purchase money paid, and no unreasonable and vexatious delay in paying the whole, possession taken, and valuable improvements made, and the vendee showing no disposition to evade the contract, and no hardship in it, and no evidence of abandonment by vendee, this court has, in many instances, decreed a specific performance of the contract by compelling the execution of a deed. *Glover* v. *Fisher*, 11 Ill. 666; *Murphy* v. *Lockwood*, 21 id. 615; *Ramsey* v. *Liston*, 25 id. 114. And, unless a party has rescinded a contract, the other party has a right to enforce its specific performance, unless he has been guilty of *laches* that renders it inequitable to insist upon its enforcement. *Anderson* v. *White*, 27 Ill. 63; *Blunt* v. *Tomlin*, id. 93. We know of no difference, in this respect, between verbal contracts so far performed, and written contracts.

The facts in this case show that the agreement of September 28, 1852, possesses all these required elements, and, though all the purchase money was not paid at the time of filing the bill, there is an offer by complainant in the bill, to pay the balance due, and do and perform whatever shall, by the court, be deemed equitable. The bill also shows that other parties, relying upon this contract, have purchased portions of the land from the complainant and have made valuable improvements

thereon, and there is no fact in the case, which would justify this court in saying that plaintiff has not, at all times, desired fully to perform the contract on his part. That he has not done so, may be found in the fact of the purchase of the contract by Stone, and the cancellation of the indebtedness of plaintiff thereon by the arrangement made with Stone.

But it is insisted by appellee, that this sale to Stone, by Parker, was illegal, and vested no interest in the purchaser. It appears from the testimony of Hurd, that an agreement was entered into and signed by Pratt and Parker, when the papers were deposited with him, that, if Pratt did not pay Parker, by the tenth day of October, the sum of $2,666.66, and interest, being the first installment due on Pratt's purchase from Parker, Brown and Hurd should deliver the papers to Parker, and Parker should have the right to sell Pratt's interest in the agreement with plaintiff in error, at public auction, and pay himself one thousand dollars as liquidated ·damages for his, Pratt's, default in not performing his covenant. Hurd states, that, a short time previous to the tenth of October, and before the papers were delivered to Parker, Pratt came to his office and had a conversation with him about these papers, in which Hurd understood Pratt as notifying him not to deliver them to Parker. Hurd replied, that he should have to observe the conditions under which the papers were left with his firm, unless prevented by injunction, and that he had no option in the matter, and Hurd advised him to get an injunction if he could. Pratt left with the avowed purpose of obtaining an injunction. In this conversation, Pratt said he should not make the payment to Parker. After this declaration, Hurd delivered the papers to Parker. Pratt never applied to Hurd for the articles of agreement with Parker. Pratt alleged as a reason why he would not pay Parker, that there was not as much land in the piece of property mentioned in the agreement as there should have been. This conversation was but a day or two before the day of payment to Parker was fixed. It was not, then, on account of any defect of title, that Pratt did

not comply with his covenant, but on account of an alleged deficiency in the quantity of the land.

The sale of this agreement was, by express consent of Amos Pratt, to be by public auction, and no judicial sanction was necessary, and it sold at a price we cannot, under the circum stances, regard as so inadequate as to justify us in setting the sale aside for the benefit of Jeremiah Pratt. In looking at the assignment from Amos Pratt to Parker, it will be seen, Pratt not only assigned his "right, title, interest and claim" to the contract with plaintiff, but to the money due and to become due thereon, and also all his right, title and interest in and to the lands and tenements described in the contract, were granted and conveyed to Parker, his heirs and assigns forever, subject to the covenants expressed in the contract.

We are at a loss to perceive in what respect this writing is deficient, as operating to divest Amos Pratt of his interest in this contract, money, or the land described in it. They all passed to Parker, and he sold them all to Stone, as he had a right to do under the agreement testified to by Hurd, and at public auction, where the whole community could have been bidders and competitors. If this transaction wants any legal sanction, and we do not think it does, it certainly would be sustained in a court of equity — no fraud, unfair advantage, or improper conduct being shown. While Stone thus became the owner of the contract, plaintiff in error, in good faith, adjusted it with Stone, and, for a valuable consideration, he was released and discharged from his covenants, Stone's debt to him paying his debt remaining due by the contract.

The notice by Amos Pratt to Hurd, not to deliver the papers to Parker, was of no force, inasmuch as Pratt was but one of the parties to their delivery to Hurd and Brown. It required the assent of Parker before Hurd could be relieved from the conditions under which he had received the papers, and so Pratt was substantially informed, and he was advised, he had better apply for an injunction to restrain Hurd and Brown from delivering the papers to Parker, and Pratt left Hurd's office with the avowed intention of so doing, but, instead of that, he

14 — 42D ILL.

betook himself to the office of Clarke, a notary public, and there, for the expressed consideration of three thousand dollars, executed a quitclaim deed for the lands to his brother, Jeremiah Pratt, he not being present, and which deed, being promptly put on record by Amos, his brother Jeremiah now sets up to defeat the equities of plaintiff in error, and of those claiming under him, and for whose benefit, as well, this bill is filed.

After this deed was made, Amos Pratt left the State for California, and has not been in this State since. It is absurd to say, that this agreement between Amos Pratt and Warren Parker conveyed no valid interest to Parker, and that it was a naked power subject to revocation. The reason given for this position is, there is no sufficient evidence of any good or valuable consideration moving from Parker to Pratt. We think the evidence of a sufficient consideration appears in the agreement between Amos Pratt and Parker and in the covenants to be performed by Parker, on the payment of the purchase money for the land by Pratt, that he would convey the lands to Pratt. In his conversation with Hurd, he spoke of this agreement, and objected to paying the money, because, as he alleged, there was a deficiency in the land. This was, probably, a mere subterfuge, as there is no proof of it, and if the fact was so, he might, notwithstanding, be compelled to take the land, if the deficiency was inconsiderable, and not impairing, materially, the value of the remainder. Parker had an interest in these papers of which he could not be deprived by the mere act of Pratt. They belonged to Parker in a certain event, which event occurred. That Jeremiah's deed was recorded one day prior to this agreement between Amos Pratt and Parker, by which Jeremiah obtained a priority, this doctrine only applies to *bona fide* purchasers, which Jeremiah Pratt is not shown, by any fact in the case, to have been. The fact that Parker did not notify Amos Pratt, before he made the sale at public auction, is wholly immaterial, as the agreement between them did not provide for such notice or for any notice.

That Jeremiah Pratt was not a *bona fide* purchaser, appears from the fact, that he paid not a dime in money or property for

this land. *Brown* v. *Welsh*, 18 Ill. 343 *; Mosier* v. *Knox College*, 32 ib. 157 *; Powell* v. *Jeffries*, 4 Scam. 390. Jeremiah Pratt had notice of the agreement between Amos Pratt and plaintiff in error, and of the agreement between the latter and Stone, as the contracts were on record, giving the world notice, and he could have known, on inquiry, of the payments made to Amos Pratt, and did know of the actual, visible, open and notorious possession of the premises by plaintiff, and by those claiming under him, which fact alone was sufficient to put Jeremiah upon inquiry. We perceive no equitable element in the position occupied by Jeremiah Pratt. The deed to him conveyed the bare legal title, subject to all equities existing against the land at the time it was conveyed.

The remaining portion of the defense, that this case was adjudicated in the case of *Stone* v. *Jeremiah and Amos Pratt*, before cited (25 Ill. 25), is not tenable. The equities and legal rights of the parties were not then adjudicated, nor was this complainant a party to that proceeding, nor a privy, and, therefore, not bound by it. Authority, to this point, is unnecessary.

A word or two more on the character of the proceedings after the purchase by Stone of the plaintiff's contract, and the settlement between them of their mutual covenants. If it was considered the purchase by Stone did not confer upon him the right to the covenants made by plaintiff with Pratt, yet the adjustment of them, *bona fide*, on the basis that it did, taken in connection with the fact of the conveyance, about that time, of the premises to Jeremiah Pratt by Amos Pratt, might be offered as an excuse for the apparent delay of complainant in performing fully his covenants. His conduct does not show a desire or intention to shirk them, but the contrary, and as now in his bill, if such adjustment as he made with Stone shall be deemed invalid, he offers to pay the residue of the purchase money, and do and perform whatever the court may decree in this behalf. He shows and has always shown every disposition to perform his contract, and other parties are now so interested in the subject matter of it, and in good faith, that we on the most mature deliberation have come to the conclusion, that

plaintiff in error should have a deed on his paying the amount due on his original agreement with Amos Pratt, less the sum of $1,000, Pratt received from Parker on the sale to Stone. As Jeremiah Pratt received his deed, with notice of the sale by Amos Pratt to the plaintiff in error, that deed must be delivered up to be canceled.

The decree of the court below is reversed and the cause remanded with directions that the cause be referred to the master in chancery to take an account, and report the sum due on the contract, from which he will deduct the sum of $1,000 paid by Stone to Parker on the sale of the agreement, and, when the same is ascertained and approved by the court, that plaintiff in error pay the same to Amos Pratt in twenty days, and, on payment of the same, Amos Pratt shall, within twenty days thereafter, make a deed of conveyance to plaintiff in error according to the terms of his agreement for the land in dispute, and, on failure so to do, then the master in chancery shall execute such deed; and, should plaintiff in error fail herein, then the bill to be dismissed. The deed from Amos Pratt to Jeremiah Pratt must be delivered up to be canceled.

*Decree reversed.*

After the foregoing opinion was filed, the defendants in error, Jeremiah Pratt, Randall, Snapp, Hammond and Cone, filed their petition, at the April Term, 1867, for a rehearing. The application was refused. The grounds of the motion are sufficiently set forth in the opinion of the court, filed upon the denial of the application.

Mr. S. W. Randall and Mr. Melville W. Fuller, for the petitioners.

Per Curiam: A petition for rehearing having been presented in this case, we have given it a very thorough re-examination, and we entertain no doubts whatever as to the correctness of our decision. It is urged in the petition that the cause was heard in the Circuit Court on the 24th of March, 1864, and

taken under advisement, and that, on the 21st of March, 1865, the complainant, by leave of court, amended his bill by inserting the following words : " And your orator is willing and hereby offers to pay, do, and perform, whatever in the opinion of this honorable court shall be equitable and requisite in order to entitle him to the relief asked." In view of this amendment, we are asked, in case a rehearing shall not be allowed, so far to change the remanding order as to send the case back with leave to the parties to take further proof. It is urged that the amendment was made without giving to the defendants an opportunity " to take proof made necessary or proper by it," and we are assured, that, by re-opening the case, the defendants will be able to show clearly that the deed from Amos Pratt to Jeremiah Pratt was made upon a valuable consideration. It is said in the petition, that, if the bill had not contained this amendment, this court would have affirmed the decree of the court below.

If the counsel for defendants suppose we attach such importance to this amendment, it is not surprising that he should urge his motion with so much earnestness, but in truth we deem the amendment wholly immaterial. It was merely formal. If it was technically necessary, which we do not concede, its absence from the original bill should have been questioned by a demurrer.

After the cause was brought to a hearing upon bill, answer, replication, and proofs, it was too late to raise the question as to whether the bill ought to have contained this offer, or, if the question had been then, for the first time raised, it would have been quite proper in the court to allow an amendment to that effect *instanter*. The reason is obvious. It did not make new proofs necessary, as assumed by counsel, since it was a matter that could not possibly be the subject of proof. It was not an allegation of fact. It did not in the slightest degree " change the character of the issues and the character of the defense," as stated in the petition for rehearing. Its absence from the original bill did not either widen or narrow the range of proof. We can hardly conceive an amendment more strictly a matter

of form than this. It was merely an offer to do whatever the court might in its wisdom think equitable, as a condition to granting relief, an offer which every complainant makes by implication the moment he files his bill. The offer is implied by the very act of coming into court, and we do not quite comprehend how relief is ever to be had or expected on any other terms. Indeed, in the printed argument for a rehearing, counsel in discussing another branch of the case say, the amendment "does not change the basis of the bill in any respect." This is undoubtedly true, but hardly reconcilable with the position taken at the outset of the petition, that "the amendment changes the character of the issues."

It may be said that the court deems this offer of sufficient importance to allude to it in the opinion hitherto filed. The allusion is incidental. The opinion shows that the complainant is not chargeable with such *laches*, as to cut him off from the right to file a bill for specific performance, and why he is not so chargeable, and, in connection with these facts, mentions, that he still offers in his bill to do what equity may require. But we did not refer to this as affecting the question of *laches*. If he had been guilty of such *laches* as to make a specific performance inequitable, on the facts disclosed by the proofs, this offer in the bill would not have changed the case in any degree, and, if, on the other hand, he had not been guilty of any *laches*, the mere absence of such an offer in the bill would not have affected, in the least, his right to a decree, if entitled to it by the evidence.

Where a portion of the purchase money remains unpaid, and a bill is filed by the vendee of land for specific performance, the bill, it is true, should, in ordinary cases, aver a tender, and should offer to bring the money into court. But the peculiar facts of this case took it out of that rule, for the reasons given in that opinion. Amos Pratt, to whom the money was payable by the contract, had himself parted with the legal title both to the land and the purchase money. He had conveyed the land to Jeremiah Pratt, and the contract with D'Wolf, that is, his legal title to the purchase money due from D'Wolf,

as also the interest in the land, had been sold at auction under his authority and bought by Stone, and with him D'Wolf had actually settled for the unpaid purchase money and upon a valuable consideration. He may therefore be well excused for not making any further tender of money to any one, until a court of chancery had determined whether any more was equitably due, and to whom due.

Allusion has been made to the fact that the contract between Pratt and D'Wolf was a forfeit contract and time of its essence. This is true, but when Pratt deposited it as security with Hurd and Brown there had been no default upon it, and, if there had been, he, by the very act of depositing it as security with a power to sell it, waived all right of forfeiture and never afterward acquired such right. From the time he thus deposited it as a valid and subsisting contract, he never acquired any legal control over it, nor had any power to declare it forfeited.

Notwithstanding all we have said, however, we should probably remand the case, leaving it to the discretion of the court below to let in further proof upon the question as to whether Jeremiah Pratt was a purchaser for a valuable consideration, if our decision rested solely on that ground. But in fact that is but one, and not the chief, ground of our decision, and, even if it were admitted that he was such purchaser, our decision would be unchanged. The one point which, independently of any others, is conclusive of the case, as is fully shown in the opinion, is, that Jeremiah Pratt took his deed with notice of D'Wolf's equity under his contract of purchase. The contract had long before been recorded, and possession had been taken under it. Here was notice from two sources, either one of which would have been sufficient. D'Wolf then, and his assignees, were entitled to a deed on this ground alone, unless their right was lost by their own *laches*, which, as shown in the opinion, was not the case.

In this view, it would be wrong to open the case for the purpose of receiving immaterial proof.

The only doubt we have really had about this case was, whether D'Wolf was not entitled to a deed without further

payment, and, by virtue of the settlement made with Stone as the owner of the contract, if, as we have held, Jeremiah Pratt was not a purchaser for a valuable consideration. But, for the reasons given when this case was before the court in another form, as reported in 25 Ill., we have deemed it the better equity that the complainants should pay the Pratts whatever may be due on the contract of purchase, less the thousand dollars paid. Although Stone acquired the legal title in this instrument by the auction sale and the deed from Parker, yet, in adjusting the somewhat complicated equities of all these parties, we have deemed it just to allow Stone, who is now, through D'Wolf, asking equity at the hands of the court, only the amount really paid by him to Parker, and thus allow to Amos Pratt or his grantees, the benefit of that portion of the consideration money which he has never in fact received, and interest, according to the terms of the contract. Even admitting Jeremiah Pratt to be a purchaser for a valuable consideration, as he bought with notice of D'Wolf's equities, this is all that he can claim at the hands of the court.

There is, however, one respect in which the remanding order should be amended if the decree has not been already executed. The original opinion directs the deed from Amos Pratt to Jeremiah Pratt, to be surrendered and canceled, and the money to be paid to Amos Pratt. Now, in any event, this deed is good as between Amos Pratt and Jeremiah Pratt and the grantees of the latter, and they, and not Amos Pratt, are entitled to the money decreed to be paid by complainant. The court therefore will decree the money to be brought into court within twenty days after the entry of its decree and notice thereof, and will determine how it is to be distributed between Jeremiah Pratt and his grantees. Instead of ordering the deed from Amos Pratt to Jeremiah Pratt to be delivered up and canceled, the better way of entering the decree will be to set aside the title of Jeremiah Pratt and of such of the defendants as claim under him so far as it is a cloud upon the title of complainants.

*Rehearing refused.*